THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PEDRO GUADALUPE ROSA, k/a "VIVO", Defendant and Appellant.

No. CR-66-392. Decided March 10, 1967.

*Enrique Miranda Merced, Edna Abruña Rodríguez,* and *E. Armstrong de Watlington* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Lolita Miranda de Escudero, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was jointly accused with two other persons of the offenses of murder in the first degree, burglary in the first degree, and grand larceny.

At a separate trial and after the three cases were jointly heard by the same jury, the latter found him guilty of murder in the first degree, guilty of burglary in the first degree, and not guilty of grand larceny.

On this appeal he assigns as the only error, the admission "in evidence of the sworn statement (confession) given

by the defendant to the prosecuting attorney Wilfredo Figueroa on August 6, 1965."

Said error, as we shall see further, was not committed.

Very early on Sunday morning, August 1, 1965, Luis Colón Salgado's automobile, a Volkswagen, of a bluish gray color, 1958 model, license plate No. 640-835, was stolen from the front of his house in Santiago Iglesias Development in Río Piedras, Puerto Rico. At seven o'clock in the morning of that day he notified the police that the above-mentioned automobile had been stolen. At about ten o'clock in the evening of that same day, August 1st, the policemen Antonio Concepción and Luis R. Delgado, who were working in the Monacillos area, entered the Gulf Service Station located in De Diego Avenue, Highway No. 21 of Monacillos and there they spoke with Ruperto Rodríguez Roque who had begun his work shift that day in the service station at 10:00 P.M. Everything was normal there. The policemen went to Monacillos and at about twenty-five or fifty meters from the station they saw a Volkswagen automobile, license plate 640-835, in the thicket close to a mango tree. They called the police station of Puerto Nuevo and it appeared that that automobile had been reported stolen. They removed it from that place and took it to the service station where they borrowed a screwdriver from Ruperto Rodríguez Roque. They started the Volkswagen's motor by pushing the car. Policeman Delgado took it to the police station, taking with him the screwdriver in case he had to use it. The other policeman stayed in the service station for ten or fifteen minutes and then went to the police station to look for his companion. They returned by San Patricio Avenue and went to the service station to return the screwdriver to Ruperto Rodríguez Roque. Upon arriving they found the said Rodríguez Roque dead, sitting in a chair, lying back, and under the chair there was a puddle of blood. The glass door of the station was broken. The pocket of Ruperto Ro-

dríguez Roque's trousers was inside out. In his left wrist he had the mark of the watch but not the watch which policeman Delgado had noticed when he saw him for the first time that night. Rodríguez Roque, who was crippled because he only had one leg, died as a result of a contusive blow which he received that night on his head. The service station's office was burglarized, the glass door was broken, somebody had entered there and stolen money from the cash register.

At about 9:30 in the nighttime on that first of August, the defendant was seen at Vista Hermosa Housing Project, with two other persons in the stolen Volkswagen which had been found by the side of the mango tree in Monacillos near the Gulf Service Station where Ruperto Rodríguez Roque was murdered.

Some days later the defendant and other suspects of the crime were detained and taken to Police Headquarters. From there they were taken to the San Juan office of the prosecuting attorney where appellant gave the sworn statement the admission in evidence of which he assigns as error.

Appellant was examined at Police Headquarters, according to his own testimony, by the detectives and a lieutenant but he did not answer their questions, nor did he make any confession. It was in the offices of the prosecuting attorney that he gave the sworn statement on the night of August 6, 1965. From the sworn statement as well as from the testimony given at the trial by prosecuting attorney Figueroa, it appears that all the warnings required until then by the case law were made to defendant. The office of the prosecuting attorney, where the defendant was giving his statement, was visible from the hall through some glass windows. In the hall there were numerous persons, among them, the other suspects and some of their relatives. The prosecuting attorney who conducted the investigation informed appellant, before the latter testified, that he was a presumptive defendant in a

case which entailed life imprisonment; that he was not bound to testify and that if he said anything that would incriminate him the prosecuting attorney would use it against him; that if he had made admissions to the police, it would in no way influence his refusal to testify; that he would be treated like the others although a policeman might have told him that the prosecuting attorney would treat him better; that he did not offer him immunity, he did not offer to use him as witness for the prosecution. He also asked him whether the policemen had attacked him and he answered no, that they had treated him well. The prosecuting attorney stated also that he advised him of his right to legal counsel; that he did not advise him of his right to be given legal assistance, if the accused was not in condition to retain counsel.

The sworn statement admitted in evidence is as follows:

"The People of Puerto Rico v. Carmelo Falú Pérez, Pedro de León, Heriberto Castro, and Pedro Guadalupe Rosa, for murder in the first degree and robbery. Sworn statement made by the witness, Pedro Guadalupe Rosa. In San Juan, Puerto Rico, August six, nineteen sixty-five. I, Pedro Guadalupe Rosa, residing in Río Piedras, Puerto Rico ward Monacillos, kilometer point three point four, nineteen years old, appear before the prosecuting attorney and after the pertinent legal warnings were made, I do hereby testify voluntarily under oath. Prosecuting Attorney: I am prosecuting attorney Wilfredo Figueroa Vélez and I am investigating some facts of a murder. I warn you that you might be accused. That you are entitled to see your relatives. To retain an attorney. To remain silent and whatever you say, you say it without any promises on my part and willfully and voluntarily, without being coerced by me or by any other person in order that you testify. Do you want to testify? Witness: Yes, sir. That last Sunday night, August first, nineteen sixty-five, Heri and Pelón were coming down in a Volkswagen car, light blue, which is the same one I saw a moment ago parked behind the prosecuting attorney's office. That this was at about nine thirty in the evening. That they invited me for a ride and I got in the car with them. That we went to look for Coco at his house and he was there and came with us in the

car. That we continued to Vista Hermosa Housing Project. From there we turned back because the police patrol was coming and we returned to the mango tree where we parked the car. That the mango tree is up the street from the light in front of the Gulf Service Station, which is by the side of the Suiza Dairy. That at the request of Heri and Coco we were going to assault the man who dispensed gasoline in the Gulf Service Station. That the four of us went directly through the thicket back of the station. That in the car we carried a pipe, which is that same one that you, sir, are showing me at this moment. And Heri took that pipe. That Heri went in by the hoist and the man was sitting by the side of a cigarette machine and Heri came and gave him a blow with the pipe and the man remained seated in the chair and Heri took out the money from the man's pocket. Then Heri broke the glass by the side of the hoist with a stone and Heri and I went inside the garage and took away some money from the cash register. That while we were doing this, Pelón and Coco kept watch on the rear of the garage. That Heri gave me some change which he took from the cash register and I put it in my pocket. That then we went away walking, because the police that I mentioned before had taken away the car. We went walking as far as the Molina grocery and in Ortiz alley we distributed the money and each one got six dollars seventy-five cents. That then I went home. That Heri passed the pipe to Coco and the latter threw it in the thicket back of the station. Signed Pedro Guadalupe Rosa. Sworn to and subscribed before me, August six, nineteen sixty-five, Wilfredo Figueroa Vélez, prosecuting attorney." (Tr. Ev. pp. 245 to 247.)

Appellant denied that the prosecuting attorney gave him the above-mentioned warnings; denied having read the sworn statement before signing it and he stated further that in the police station he had been struck by the knees.

 The judge decided correctly that said statement was voluntarily given by the defendant. It so appears from the examination we have made of the transcript of the evidence. The important and controlling factor as to whether or not defendant's right not to incriminate himself has been violated,

is not that the guarantees offered to defendant so as to prevent it should appear from the document which contains defendant's confession, but rather whether really and as a matter of fact the confession was surrounded by all such guarantees, and that consequently the confession was voluntarily made by the defendant completely aware of all his constitutional rights.

■ Now then, it is not a sufficient warning to protect defendant's right not to incriminate himself that he be advised of his right to consult a lawyer before testifying and to have assistance of counsel during the interrogation. It is necessary also that he be advised as to his right to be given legal assistance in case he cannot afford to retain an attorney. It was thus decided by the Supreme Court of the United States on June 13, 1966. *Miranda* v. *Arizona* (759) ; *Westover* v. *United States* (761) ; *California* v. *Stewart* (584) and *Vignera* v. *New York* (760), 34 U.S.L. Week 4521. However, in *People* v. *Adorno Lorenzana,* 93 P.R.R. 768 (1966), we held "that the rulings established in *Miranda,* which we had previously established in *Rivera Escuté* v. *Delgado, Warden,* 92 P.R.R. 746 (1965) are available only to persons whose trials had not begun on October 26, 1965, date on which we decided the case of Rivera."

In the above-cited case of Rivera Escuté we did not establish all the rules of the *Miranda* case. So that what we meant to say in *Adorno Lorenzana* was that the rulings established in *Miranda* and which in turn had been adopted in *Rivera Escuté* are available only to persons whose trials had not begun on October 26, 1965; but the rulings in *Miranda* which were not adopted in advance in *Rivera Escuté*, can only be available to the persons whose trials begin subsequent to June 13, 1966, date of the decision in the *Miranda* case.

One of the rules of this case of Miranda, not adopted in *Rivera Escuté* is the one referring to the warning to the defendant, before testifying in the investigation process that

he is entitled to have the State designate an attorney to give him legal aid at that stage, if he cannot afford to retain one. Although we actually did not adopt this rule in *Rivera Escuté*, the omission of such warning can be available only to defendants whose trials are held subsequent to the decision of the case of Miranda.

The rules established in *Rivera Escuté*, as they appear from the opinion rendered in the case are the ones textually copied below:

"According to the pronouncements of *Escobedo* v. *Illinois*, as stated by Mr. Justice Goldberg, which are the raison d'etre of the Court's conclusions copied above, and according to that judicial criterion which we accept as an authorized and correct interpretation of that decision and of its significance and scope, we now say that the confession of an accused or suspect or the admissions which substantially prejudice him, obtained while in custody of the police or other competent authority during interrogation for the purpose of eliciting incriminating statements, are not admissible in evidence in the 'criminal prosecution' (1) if he was not effectively advised by the police or other competent authority, before testifying, of his absolute constitutional right to stand mute and not to incriminate himself; and (2) *if he was not advised by the police or other competent authority, before testifying, of his right to have aid of counsel,* the fact that the accused did not actually request it not relieving the prosecution from the obligation to advise him of his right to have it; or (3) if he requested to confer with an attorney and was not permitted to be thus assisted when his statement was obtained." (Italics ours.) (92 P.R.R. 757.)

. . . . . . . .

"Under the circumstances recited above, namely, when the investigation shifts to accusatory and is focused on a particular suspect for the purpose of eliciting a confession, *Escobedo* indicates that the adversary system begins to operate. Having shifted to *adversary,* it is the duty of the police or other competent authority to warn him of his constitutional right to remain silent and not to incriminate himself and of *his constitutional right to have then and there assistance of counsel and to be*

*permitted to have it."* (Italics ours.) (92 P.R.R. 760.)

The opinion ends thus:

"Convinced as we are that the absence of counsel at the time petitioner gave his confession, as the law read at that time, did not affect the fact itself of the petitioner's guilt or innocence, since we sustained the voluntariness of the confession, there is no basis, under the principles announced hereinabove, to collaterally invalidate his conviction and to apply retroactively *the constitutional norm which we now adopt for the administration of our criminal justice, following the pronouncement of Escobedo* v. *Illinois."* (Italics ours.)

In the instant case defendant was given all the warnings we indicated as indispensable in the case of Rivera Escuté. He was not given the additional warning of *Miranda* as to his right that the State could provide him with legal aid, but since the decision of Miranda was subsequent to the trial in this case such defense was not available to appellant.

The judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Santana Becerra concurs in the result.